## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EAST FARM COMMERICAL FISHERIES CENTER,<br>Uri, East Farm Campus Buildings 61B<br>Kingston, RI 02881,<br><br>        Plaintiff,<br><br>   v.<br><br>TERRENCE GRAY, *in his official capacity as Director*,<br>Rhode Island Department of Environmental Management<br>235 Promenade Street,<br>Providence, RI 02908,<br><br>DAVID E. CHOPY, *in his official capacity as Administrator,*<br>Rhode Island Department of Environmental Management, Office of Compliance and Inspection<br>235 Promenade Street<br>Providence, RI 02908,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff East Farm Commercial Fisheries Center as and for its Complaint against Defendants Terrence Gray and David Chopy, states and alleges as follows:

### INTRODUCTION

1.      The Rhode Island lobster industry is essential to Rhode Island's culture, heritage, identity, and economy. The Rhode Island lobster industry is mostly comprised of small, family-owned businesses, and lobster fishing has offered a distinct way of life to generations of Rhode

Island citizens. The impact of the Rhode Island lobster industry extends well beyond those that actually ply the seas fishing for the product and their families. The Rhode Island lobster industry supports local onshore businesses, including restaurants, lobster dealers, seafood processors, storage facilities, vessel repair yards, marinas, and tourist shops. Many small and family-owned shored-businesses rely on the lobster industry and the revenue they provide to stay afloat.

2.     East Farm Commercial Fisheries Center submits this Complaint to prohibit the Rhode Island Department of Environmental Management, via the actions of Terrence Gray and James O'Connor (collectively, "Defendants") from implementing and enforcing an illegal and unconstitutional, warrantless 24-hour Global Positioning System ("GPS") surveillance of location and movement of each vessel via the Vessel Monitoring System ("VMS"), targeting a select group of federally permitted lobstermen in federal waters off the coast of Rhode Island. This unconstitutional and illegal action is allegedly being done pursuant to a putative federal final rule that, by the federal agency's own admission, does not exist. [1]

## PARTIES

3.     Plaintiff East Farm Commercial Fisheries Center ("EFCFC") is a Rhode Island non-profit corporation dedicated to the preservation of a sustainable lobster resource and the fishermen and communities that depend on the Rhode Island lobster fishery. EFCFC has proactively worked to develop and consistently supported conservation measures for the North Atlantic Right Whale based on sound science and compliance with the law.

---

[1]     Plaintiff brought a concurrent lawsuit against NMFS in the District of D.C. – *East Farm Commercial Fisheries Center v. Raimondo et al.*, 1:23-cv-03629-CJN (D.D.C. 2023). Plaintiff filed a notice of voluntary dismissal based on the federal government's representation that no final rule requiring VMS exists. *Id.* at Dkt. # 11 ("the Federal Government represented that the National Marine Fisheries Service has not promulgated a proposed or final rule, or any other federal regulation, requiring federally licensed lobster vessels to install Addendum XXIX electronic vessel tracking devices by December 15, 2023."); Dkt. # 13 (voluntary dismissal)

4.      EFCFC is a credible voice for the Rhode Island lobster fishery on marine resource management issues and is highly regarded by stakeholders in the health of Rhode Island marine and coastal resources.

5.      EFCFC brings this lawsuit on behalf of its members, who currently fish and intend to continue to fish and keep their gear in the federal waters off the coast of Rhode Island.

6.      Defendant Terrence Gray is the Director of the Rhode Island Department of Environmental Management ("RIDEM"). Director Gray directs all business of the RIDEM and is the individually ultimately responsible under Rhode Island law for enforcing RIDEM regulations and ensuring that the actions and decisions of RIDEM in promulgating and enforcing those regulations comply with all applicable laws and regulations.

7.      Defendant David Chopy is the Administrator of the RIDEM Office of Compliance and Inspection. Upon information and belief, he is the individual responsible for enforcing the mandate to install VMS on vessels engaged in commercial fishing of lobster and Jonah Crab.

## RELEVANT THIRD-PARTIES

8.      Gina Raimondo is the Secretary of the U.S. Department of Commerce. Secretary Raimondo directs all business of the Department of Commerce and is the official ultimately responsible under federal law for ensuring that the actions and decisions of the Department comply with all applicable laws and regulations.

9.      Janet Coit is the Assistant Administrator of the National Oceanic and Atmospheric Administration Fisheries ("NOAA" or "NOAA Fisheries"). Assistant Administrator Coit has responsibility for implementing and fulfilling the agency's duties under the ESA and the MMPA, as well as the Consolidated Appropriations Act, 2023, H.R. 2617.

10.    The National Marine Fisheries Service ("NMFS") is an agency within NOAA. NFMS is

the agency to which the Secretary of Commerce has delegated the authority to implement

regulations regarding the ESA and the MMPA, as well as the Consolidated Appropriations Act,

2023, H.R. 2617.

## JURISDICTION AND VENUE

11.    The United States District Court for the District of Rhode Island has jurisdiction over this

matter under 28 U.S.C. § 1331 because this case presents a federal question under the laws of the

United States, including 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United

States Constitution, the Magnuson-Stevens Fishery Conservation and Management Act, as

amended by the Sustainable Fisheries Act, 16 U.S.C. § 1801, *et seq.* ("MSA"), the Consolidated

Appropriations Act, 2023, H.R. 2617 ("CAA"), and the Atlantic Coastal Fisheries Cooperative

Management Act, 16 U.S.C. § 5101 *et. seq*. An actual justiciable controversy exists between

Plaintiff and Defendants.

12.    Venue is proper in the District of Rhode Island pursuant to 28 U.S.C. § 1391 as

Defendants are residents of the District of Rhode Island and a substantial part of the events or

omissions giving rise to Plaintiff's claims occurred and will occur in the District of Rhode Island.

13.    This Court may issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 and

this Court's equitable jurisdiction.

## LEGAL BACKGROUND

### 42 U.S.C. § 1983

14.     42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

15.     42 U.S.C. § 1983 empowers Plaintiff the right to sue a state official for violations of its members' federal constitutional rights.

16.     Under 42 U.S.C. § 1983, state officials sued in their official capacities for injunctive relief are "persons" subject to suit.

### The United States Constitution

17.     The Fourth Amendment to the United States Constitution protects the people against the government's "unreasonable searches and seizures." U.S. Const. amend. IV. The government conducts an unreasonable search by trespassing, without a warrant, into personal property to gain information for use in potential prosecution against that person.

18.     The Fourth Amendment protects a person's right to privacy; warrantless searches that violate a person's reasonable expectation of privacy are unreasonable and unconstitutional.

19.     Warrantless access to the GPS information of a person's "detailed, encyclopedic, and effortlessly compiled" locations and movements violates the Fourth Amendment. See *Carpenter v. U.S.*, 138 S. Ct. 2206, 2209 (2018).

20.     The Fourth Amendment protects a person's possessory rights as it forbids the government from trespassing without a warrant.

21.     The Fourteenth Amendment protects life, liberty, and property from state government deprivation.

## The Magnuson-Stevens Act

22.     Recognizing the economic importance of commercial and recreational fishing, the MSA was adopted to protect, manage, and grow the United States' fishery resources. To achieve these goals, the MSA delineates scientific and conservation-based statutory obligations to sustainably manage fishery resources for the benefit of the fishing industry and the environment. 16 U.S.C. § 1801 et seq.

23.     The MSA grants the Department of Commerce the ability to exercise "sovereign rights" to conserve and manage fisheries resources "for the purposes of exploring, exploiting, conserving, and managing all fish" in the Exclusive Economic Zone ("EEZ"). 16 U.S.C. §§ 1801(b)(1), 1811(a). Generally, the EEZ extends from the seaward boundary of each of the coastal States to 200 nautical miles offshore. 16 U.S.C. § 1802(11).

24.     The MSA provides for the development and implementation of fishery management plans ("FMPs") for fisheries. 16 U.S.C. § 1801(b)(4). FMPs are implemented with the goal of continually achieving and maintaining optimum yield within such fishery. *Id*. All FMPs, and their implementing regulations, must be prepared and executed in accordance with ten fishery conservation and management "National Standards." Id.; 16 U.S.C. § 1851(a). At least six of the standards are implicated by the VMS Rule:

> a.  National Standard One requires that "[c]onservation and management measures shall prevent overfishing while achieving, on a continuing basis, the optimum yield from each fishery for the United States fishing industry." 16 U.S.C. § 1851(a)(1).

6

    b.  National Standard Two requires that "[c]onservation and management measures shall be based upon the best scientific information available." 16 U.S.C. § 1851(a)(2).

    c.  National Standard Four requires that agency measures that "allocate or assign fishing privileges among various … fisherman" should be "fair and equitable" and "reasonably calculated to promote conservation." And "no particular individual, corporation, or other entity [should] acquire[] an excessive share of such privileges." 16 U.S.C. § 1851(a)(4).

    d.  National Standard Six requires that "[c]onservation and management measures shall take into account and allow for variations among, and contingencies in, fisheries, fishery resources, and catches." 16 U.S.C. § 1851(a)(6).

    e.  National Standard Seven requires that "[c]onservation and management measures shall, where practicable, minimize costs and avoid unnecessary duplication." 16 U.S.C. § 1851(a)(7).

    f.  National Standard Eight requires that "[c]onservation and management measures shall, consistent with the conservation requirements …, take into account the importance of fishery resources to fishing communities by utilizing economic and social data that [are based upon the best scientific information available], in order to (A) provide for the sustained participation of such communities, and (B) to the extent practicable, minimize adverse economic impacts on such communities." 16 U.S.C. § 1851(a)(8).

25. The MSA prescribed the required and discretionary provisions of the FMPs. 18 U.S.C. § 1853.

    a.  Among other requirements, FMPs must include conservation and management measures; fishery descriptions; certain yield assessments; essential fish habitat identification; fishery impact statements; criteria for identifying overfishing within the fishery; standardized reporting methodology for bycatch analysis; and a mechanism for setting annual catch limits. 18 U.S.C. § 1853(a).

    b.  Among other provisions, FMPs may include fishery permits; designation of limited or closed off fishing zones; limitations on catch and sale of fish; prohibitions and requirements related to gear types; requirements for carrying observers on board to collect conservation and management data; reservation of portions of allowable catch for use in scientific research. 18 U.S.C. § 1853(b).

26.     Within the constitutional limit, the MSA purports to authorize warrantless access to VMS data by the United States Coast Guard ("USCG") and other authorized law enforcement. 16 U.S.C. § 1861(b)(1)(A)(vi). Before it can board or seize a vessel, or its catch, USCG or other authorized law enforcement must have "reasonable cause to believe" a law is being broken. 16 U.S.C. § 1861(b)(1)(A)(i).

27.     The MSA does not require lobster boats to have or to collect such location related data. Nor does it mention or contemplate a global positioning system or a 24-hour location and movement surveillance whether a vessel is being used to fish in federal waters under a federal permit or for other purposes that NOAA does not regulate. There is no provision to collect information on vessel movements when the vessel is not fishing under its permit.

28.     The MSA permits information collections that are beneficial for developing, implementing, or revising FMPs. 18 U.S.C. § 1881a(a)(1). If a Regional Fishery Management Council determines such information collection is necessary, it may request that the Secretary implement the collection. *Id*. If the Secretary determines that the collection is justified, then the Secretary has the duty to promulgate regulations implementing the collection program. *Id*. If determined necessary, the Secretary may also initiate an information collection. 18 U.S.C. § 1881a(a)(2).

29.     The MSA establishes eight Regional Fishery Management Councils ("Councils"). 16 U.S.C. § 1852(a)(1). The Councils share fishery conservation, management, and regulatory responsibilities with Commerce and NOAA.

30.     The Councils prepare, monitor, and revise FMPs. 16 U.S.C. § 1801(b)(5). The Councils, in conjunction with the Secretary, may also propose regulations implementing or modifying an FMP or plan amendment. 18 U.S.C. § 1853(c); *cf*. 18 U.S.C. § 1855(d).

31.    The Councils also provide a forum through which the fishing industry, as well as other interested parties, can take an active role in advising, establishing, and administering FMPs. 16 U.S.C. § 1801(b)(5).

32.    The MSA prescribes the required and discretionary provisions of FMPs. 18 U.S.C. § 1853.

33.    The MSA permits information collections that are beneficial for developing, implementing, or revising FMPs. 18 U.S.C. § 1881a(a)(1).

      a.  If a Council determines such information collection is necessary, it may request that the Secretary implement the collection. *Id*.

      b.  If the Secretary determines that the collection is justified, then the Secretary has the duty to promulgate regulations implementing the collection program. *Id*.

      c.  If determined necessary, the Secretary may also initiate an information collection. 18 U.S.C. § 1881a(a)(2).

### The Atlantic Coastal Fisheries Cooperative Management

34.    In 1993, Congress passed the Atlantic Coastal Fisheries Cooperative Management Act, 16 U.S.C. § 5101 *et. seq.* which approved an interstate compact to create the Atlantic States Marine Fisheries Commission ("ASMFC") to manages fishery resources in the U.S. Waters of from Maine to Florida.

35.    Pursuant to the ACFCMA, the Secretary of Commerce, in cooperation with the Secretary of the Interior, develops plans to support the ASMFC.

36.    If there is not an "approved and implemented fishery management plan under the" MSA, for the federal exclusive economic zone, then the Secretary of Commerce "*may* implement regulations to govern fishing in the exclusive economic zone that are (A) compatible with the effective implementation of a coastal fishery management plan; and (B) consistent with the [MSA] national standards." 16 U.S.C. § 5103 (b)(1) (emphasis added).

37.     The ASMFC is required to "prepare and adopt coastal fishery management plans to provide for the conservation of coastal fishery resources." 16 U.S.C. § 5104(a)(1).

38.     However, if a fishery "is located in both State waters and the exclusive economic zone, the Commission *shall* consult with appropriate Councils to determine areas where such coastal fishery management plan may complement Council fishery management plans." *Id.* (emphasis added)

## The Consolidated Appropriations Act

39.     In 2021, NMFS promulgated a Biological Opinion ("2021 BiOp") pursuant to the Endangered Species Act and Marine Mammal Protection Act, along with amendments to the 2021 Atlantic Large Whale Take Reduction Plan ("ALWTRP"), ostensibly designed to protect the Right Whale.

40.     That 2021 BiOp and the ALWTRP amendments were challenged in *Maine Lobstermen's Ass'n, Inc. v. Nat'l Marine Fisheries Serv.*, 626 F. Supp. 3d 46 (D.D.C. 2022), rev'd and remanded sub nom. *Maine Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 70 F.4th 582 (D.C. Cir. 2023), with the District of D.C. ultimately ruling in favor of NMFS.

41.     This decision was ultimately reversed and remanded by the D.C. Circuit in *Maine Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 70 F.4th 582 (D.C. Cir. 2023), which found the 2021 BiOp to be in violation of the APA for, *inter alia¸* failure to use the best science and apply the same to outcomes reasonably likely to occur.

42.    In response to the District of D.C.'s ruling in *Maine Lobstermen's Ass'n, Inc. v. Nat'l Marine Fisheries Serv.*, 626 F. Supp. 3d 46 (D.D.C. 2022), Congress passed the Consolidated Appropriations Act of 2023 § 101(a)-(b), H.R. 2617, ("CAA").[2]

43.    The CAA § 101 included a mandate that the ALWTRP amendments "shall be deemed sufficient to ensure that the continued Federal and State authorizations of the American lobster and Jonah crab fisheries are in full compliance" with the Endangered Species Act and Marine Mammal Protection Act under December 31, 2028.

44.    The CAA requires NMFS to "promulgate new regulations for the American lobster and Jonah crab fisheries consistent with the [MMPA] and the [ESA] that take effect by December 31, 2028, utilizing existing and innovative gear technologies, as appropriate[.]" CAA § 101(a)(1).

45.    However, the CAA also provided that the provisions of subsection (a) "shall not apply to an existing emergency rule, or any action taken to extend or make final an emergency rule that is in place on the date of enactment of this Act, affecting lobster and Jonah crab." *Id.* § 101(b).

46.    There was no emergency rule in place regarding VMS installation at the time of the CAA's enactment.

47.    In briefing to the District of D.C., NMFS has represented that "[h]owever, with the CAA, Congress cut right to the chase by stating that the measures in the 2021 Rule[3] put authorization of the lobster fishery into compliance with the ESA and MMPA. The CAA obviates the need for

---

[2]    The legislative history for the CAA comes from the Honorable Senator Angus King of Maine, who stated that the purpose of the CAA was to "pause the economic death sentence" caused by the ruling in *Maine Lobstermen's Ass'n, Inc. v. Nat'l Marine Fisheries Serv.*, 626 F. Supp. 3d 46 (D.D.C. 2022). 168 Cong. Rec. S9591, S9607–08 (daily ed. Dec. 20, 2022).

[3]    The "2021 rule" refers to NMFS's September 17, 2021 Atlantic Large Whale Take Reduction Plan Amendment Rule.

further agency action, as contemplated by Plaintiffs." *Center for Biological Diversity, et al., v. Raimondo, et al.,* 1:18-cv-112-JEB/1:18-cv-283—JEB, Dkt. #258 at 5 (D.D.C. 2023).

## STATEMENT OF FACTS

48.    ASMFC manages the American Lobster fishery pursuant to Amendment 3 to the Interstate Fishery Management Plan (FMP) and its Addenda (I - XXIX) and manages the Jonah Crab Fishery pursuant to the Interstate Fishery Management Plan (FMP) for Jonah Crab (2015) and its two addenda.

49.    In March 2022, the ASMFC published "Addendum XXIX to Amendment 3 to the American Lobster Fishery Management Plan" and Addendum IV to the Jonah Crab Fishery Management Plan ("collectively, the "Addenda")– *Electronic Vessel Tracking for Federal Permit Holders*, attached hereto as "Exhibit A."

50.    Upon information and belief, the ASMFC did not consult with any MSA-authorized Councils prior to amending the Addenda.

51.    The Addenda provide that the American Lobster Management Board initiated the Addenda to "consider implementing electronic vessel tracking requirements for federally-permitted vessels in the lobster and Jonah crab fisheries to collect location and spatial effort data." (Exhibit A at 1.)

52.    In explaining why commercial lobstermen should be required to install VMS on their vessels, the Addenda state:

> To date, the majority of spatial analyses of lobster and Jonah crab fishery data have been constrained to NOAA statistical areas and state management areas, hindering the ability to quantify effort in specific regions or identify important transit routes and fishing grounds. The application of electronic vessel tracking to this fishery could significantly improve the information available to fishery managers and stock assessment scientists. In particular, a number of challenges the fishery is

currently facing pose a critical need for electronic tracking data in the offshore fishery:

(1) The stock assessment is currently limited by the coarse spatial scale of available harvest data for American lobster. NOAA Fisheries statistical areas and latitude/longitude coordinates are collected on the NOAA Fisheries Greater Atlantic Regional Fisheries Office (GARFO) Vessel Trip Report (VTR), however the collected spatial data represent the location of where the majority of the fishing effort occurred. The nature of the coarse spatial data is insufficient for management and scientific purposes. Though harvester reporting at the 10-minute square level was adopted for federally-permitted lobster vessels reporting to the states and the federal VTR continued to collect latitude and longitude for each trip, the precision of spatial information is not consistent across federal permit holders. This finer scale data does not provide the precision to accurately apportion effort within the stock units.

(2) Due to interactions between protected marine resources and the lobster and Jonah crab fisheries, the fisheries will be required to implement significant risk reduction efforts under the Atlantic Large Whale Take Reduction Plan. These risk reduction efforts are based on models that estimate the location of vertical buoy lines using effort data of a similarly coarse resolution.

(3) Recent executive orders have prioritized the development of offshore renewable energy and the conservation of US waters. The development of emerging ocean uses such as wind energy, aquaculture, and marine protected areas may all create marine spatial planning challenges for the lobster and Jonah crab fisheries.

(4) The large geographic footprint and low density of lobster gear in the offshore federal management area makes it difficult to locate gear for compliance checks, reducing the efficiency and efficacy of offshore enforcement efforts.

(Exhibit A at 1-2.)

53.    In the Addenda, ASMFC admits that lobster permit holders already provide locational data, including "latitude and longitude point meant to represent where the majority of fishing occurred," "10 minute square(s) fished," and "the statistical area fished." (Exhibit A at 3.)

54.    In the Addenda, ASMFC specifically cites to the ALWTRP Amendments and the 2021 BiOp to justify why VMS installation would be necessary, but the CAA holds that the lobster

and Jonah crab industries are already in compliance with the ESA and MMPA and that no additional regulations are allowed. (Exhibit A at 4.)

55.    The Addenda claim that requiring VMS installation will "improve enforcement in the offshore area", specifically providing:

> It has long been recognized that enforcement efforts in the offshore federal lobster fishery need to be improved, a particular concern given the rapid increase in landings and value during the last decade. As a result, there are ongoing efforts to enhance enforcement capabilities, including discussions around an offshore enforcement vessel capable of hauling and re-setting long trawls. Enforcement personnel have consistently noted that having the ability to differentiate when a boat is steaming versus hauling is critical to efforts to inspect gear and identify when fishermen are using illegal gear. Even if location data are not reported in real-time, once a fishing location can be identified from vessel tracking data, enforcement personnel would be able to go to that location to inspect gear for appropriate markings, buoys, escape vents, and ghost panels. Given finite enforcement resources, information on distinct fishing locations would improve the efficiency and capability of offshore enforcement efforts.

(Exhibit A at 5.)

56.    The Addenda added a new section 3.1 and 3.4.1 respectively, which inserted a VMS compliance requirement as follows:

> This section adds to Section 3.1 of Addendum XXVI to American Lobster Amendment 3 and Section 3.4.1 of the FMP for Jonah Crab under the adaptive management procedures established in section 3.6 of the FMP for American Lobster and 4.4 of the FMP for Jonah Crab. The intent of the selected management program is to enhance harvester effort data collection.

> Addendum XXIX (American lobster) and IV (Jonah crab) implement electronic tracking requirements for federally-permitted lobster and Jonah crab vessels with commercial trap gear area permits.

> Federal lobster and Jonah crab vessels issued commercial trap gear area permits are required to install an approved electronic tracking device to collect and transmit spatial data in order to participate in the trap gear fishery. This means any federally-permitted vessel without an approved electronic tracking device is prohibited from landing lobster or Jonah crab taken with 6  trap gear. Federal permit holders are required to install and

activate an approved device prior to beginning a lobster or Jonah crab fishing trip with trap gear. The device must remain on board the vessel and powered at all times when the vessel is in the water, unless the device is authorized to power down by the principal port state. Possible reasons for authorization to power down include but are not limited to vessel haul out/repairs and device failure reported to the principal port state. Tampering with an approved tracking device or signal is prohibited; tampering includes any activity that may affect the unit's ability to operate or signal properly, or to accurately compute or report the vessel's position. These requirements apply to all federal permit categories included in Table 1.

(Exhibit A at 5-6.)

57.    The Addenda then included exceptions for when VMS requirements would not apply:

A person with a state-only lobster permit and no federal commercial trap gear area permit

A permit holder with federal commercial trap gear permit that has been placed in confirmation of permit history (CPH), a permit status for when a vessel with limited access permits has sunk, been destroyed, or has been sold to another person without its permit history

A vessel with a federal lobster commercial trap gear permit listed in Table 1 that does not fish trap gear at any point in the fishing year (i.e., only fishes other gear under a federal lobster commercial/non-trap permit, charter/party non-trap permit, and/or does not fish any trap gear at any point in the fishing year)

(Exhibit A at 6-7.)

58.    The Addenda then included specific requirements for the VMS tracker in a "Table 2":

| *Requirements of Tracking Devices and Vendors* |
|---|
| • Collection of location data at a minimum rate of one ping per minute for at least 90% of the fishing trip |
| • Data events must contain device's current datetime, latitude, longitude, device and vessel identifier • Minimum accuracy of 100 m (328.1 ft) accuracy and position fix precision to the decimal minute hundredths |
| • Ruggedness specifications allowing function in the marine environment |
| • Ability to PUSH location data to the ACCSP trip locations API |
| • Vendor customer service requirements |
| • Vendor must maintain the confidentiality of personally identifying information and other protected data in accordance with federal law |

(Exhibit A at 7.)

59.     The Addenda included specific requirements for Data Collection Rates, Precision and Accuracy Requirements, Tracking Hardware Considerations, Data Submission Requirements, and Customer Service Requirements. (Exhibit A at 8-9.)

60.     Of particular note, the VMS would have to have a "minimum rate of one ping per minute for at least 90% of the fishing trip" which would communicate the "device's current datetime, latitude, longitude, device/vessel identifier and other optional data fields" and would have to be communicated within one hour from the completion of the fishing trip. (Exhibit A at 7.)

61.     Even when the vessel is at berth, it must still have the tracker active in pinging, just at a decreased rate. (Exhibit A at 8.)

62.     The VMS must be able to provide the location of the vessel to "a minimum of 100 m (328.1 ft) accuracy and position fix precision to the decimal minute hundredths." (Exhibit A at 8.)

63.     The VMS data must include device identifier, datetime, latitude, and longitude, and a vessel identifier (Coast Guard number or state registration number). (Exhibit A at 8.)

64.     The Addenda go on to contemplate that "[u]pon completion of rulemaking to implement federal harvester electronic vessel trip report (eVTR) requirements for federal lobster permits, GARFO will incorporate federal lobster eVTR data into its quality assurance program." (Exhibit A at 11.)

65.     Upon information and belief, no final rule has been published implementing eVTR requirements.

66.    The Addenda Appendix A provide that "[t]his Addendum is effective on December 15, 2023". (Exhibit A at 14.)

67.    The Addenda further provide that "The Atlantic States Marine Fisheries Commission recommends that the federal government promulgate all necessary regulations in Section 3.0 to implement complementary measures to those approved in this addendum. The Commission requests that NOAA Fisheries publish the final rule on vessel tracking by May 1, 2023, with implementation no later than December 15, 2023." (Exhibit A at 14.)

68.    Finally, the Addenda contained an Appendix B contains a draft notice to permit holders informing them that:

> Under the authority of the Atlantic Coastal Fisheries Cooperative Management Act, Addendum XXIX to Amendment 3 to the Interstate Fishery Management Plan for American Lobster and Addendum IV to the Fishery Management Plan for Jonah crab requires all vessels with a federal American Lobster Trap Gear Area permit to have an approved vessel tracker installed as of Month DD, YYYY. Tracking devices must be installed prior to the permit holder's first fishing trip. This vessel tracker must remain powered and transmitting when the vessel is in the water regardless of landing state, trip type, location fished, or target species. All devices must follow the specifications outlined in Section 3.1 of Addendum XXIX. A list of approved devices along with vendor contact information is attached to this document.
>
> The principal port on your Federal Fishery Permit lies within the [Principal Port State], thus the [Principal Port State Agency] will be tasked with certifying the installation of your vessel tracking device. In the event you believe your tracker is not functioning correctly and must be serviced, please contact [Principal Port State Agency], and inform them of your situation.
>
> Please complete, sign and return this form once an approved device has been installed on your vessel.

(Exhibit A at 38.)

69.    Despite requesting that NMFS promulgate a Final Rule to implement a mandatory VMS tracking system, NMFS never did so.

70.     Instead, Defendants have taken it on themselves to require the installation of a VMS tracker on federally licensed lobstermen (the "VMS Rule"), citing the Addenda's VMS requirement as the basis for requiring the VMS tracker.[4]

71.     In a May 2, 2023 webinar, Defendants clarified some aspects of their VMS Rule (the slides for the webinar are attached hereto as "Exhibit B").

72.     Defendants represent that the VMS Rule does not apply to:

      a.   A person with a state-only lobster permit and NO federal commercial trap gear area permit

      b.   A permit holder with federal commercial trap gear permit that has been placed in CPH, a permit status for when a vessel with limited access permits has sunk, been destroyed, or has been sold to another person without its permit history

      c.   A vessel with a federal lobster commercial trap gear permit listed that DOES NOT fish trap gear at any point in the fishing year (i.e., only fishes other gear under a federal lobster commercial/non-trap permit, charter/party non-trap permit, and/or does not fish any trap gear at any point in the fishing year)

(Exhibit B at 5 (capitalization in original).)

73.     Defendants also confirmed that "[t]rackers must be onboard and powered on for ***all*** trips (even non-lobster/non-commercial trips)" (Exhibit B at 6 (emphasis in original).)

74.     Defendants mandated that the VMS device "must be setup and installed prior to the first trap fishing trip on or after December 15, 2023." (Exhibit B at 8.)

75.     Defendants further mandated that Plaintiff's members "[r]eturn signed affidavit to RI DMF indicating device is installed and powered on prior to first fishing trip on/after December 15th, 2023" (Exhibit B at 11.)

---

[4]     *See* https://dem.ecms.ri.gov/sites/g/files/xkgbur861/files/2023-06/RI_LobsterCrab_TrackerDistribution_Application.pdf.

76.    Defendants have no legal authorization to impose these mandates on Plaintiff's members as NMFS never developed a final rule authorizing ASMFC and RIDEM to implement the VMS Rule.    *See*    https://dem.ri.gov/natural-resources-bureau/marine-fisheries/commercial-fishing-dealer-resources/fishery-relief (a printout of the relevant website portion as it appeared on December 11, 2023, is attached hereto as "Exhibit C".)

77.    Specifically, in a section titled "American Lobster and Jonah Crab Vessel Tracking Device Distribution" RIDEM provides:

> The RIDEM, Division of Marine Fisheries will be using congressional economic relief funds funneled through the Atlantic States Marine Fisheries Commission to assist the Rhode Island Lobster Industry *in compliance with the recent NOAA final rule requiring electronic vessel tracking devices on vessels by December 15, 2023*. RI DMF administers the tracking program to federal fishery permit holders with principal ports in Rhode Island and will be using the available funds to directly purchase electronic tracking devices and data plans on behalf of permit holders. Rhode Island will notify you by US mail if your vessel requires a tracking device. If you believe you are an eligible permit holder and have not received an application in the mail please contact the RI DMF Vessel Tracking Team at DEM.VMS@dem.ri.gov or at (401) 560-4090.

> Beginning December 15th, 2023, all Rhode Island federal lobster trap permit holders for areas 1, 2, 3, 4, 5, and Outer Cape Cod must have installed an approved tracking device prior to trap fishing. Through an application, approved harvesters will be able to choose from two of the type approved VMS device vendors. Once delivered, electronic tracking devices are the property of the ordering entity and all responsibility for maintenance and operation of requisite tracking devices is solely their responsibility. All future device purchases and data service agreements shall be between vendors and harvesters.

> **State Regulations** – To Be Developed

(Exhibit C at 2 (bolding in original, italics supplied))

78.    To be clear, despite RIDEM's representation to the contrary, there is no "recent NOAA final rule requiring electronic vessel tracking devices on vessels by December 15, 2023."

79.     NMFS does know how to make a final rule mandating VMS installation and operation, having done so with the final rule *Fisheries of the Caribbean, Gulf of Mexico, and South Atlantic; Electronic Reporting for Federally Permitted Charter Vessels and Headboats in Gulf of Mexico Fisheries*, 85 Fed. Reg. 44005 (although this rule was ruled illegal under the APA for violations of the MSA and likely the Fourth Amendment by the Fifth Circuit in *Mexican Gulf Fishing Co. v. United States Dep't of Com.*, 60 F.4th 956 (5th Cir. 2023)).

80.     But here, no such VMS rule exists, as admitted by NMFS. *See East Farm Commercial Fisheries Center v. Raimondo et al.*, 1:23-cv-03629-CJN (D.D.C. 2023) at Dkt. # 11 ("the Federal Government represented that the National Marine Fisheries Service has not promulgated a proposed or final rule, or any other federal regulation, requiring federally-licensed lobster vessels to install Addendum XXIX electronic vessel tracking devices by December 15, 2023.").

81.     Therefore, Plaintiff's members are facing a December 15, 2023 deadline (*i.e.*, 4 days from now) to install a VMS system onto their vessels or face the loss of their right to fish, their livelihood, and their connection to a centuries-old tradition.

82.     This VMS Rule is being forced onto Plaintiff's members pursuant to a policy change recommendation from an interstate compact that cannot act outside the color of federal law, whose policy change was not codified by NMFS, and by a state agency enforcing the non-codified change with no legal authority to do so.

## COUNT I

### 42 U.S.C. § 1983 Violation - Violation of the Fourth and Fourteenth Amendments to the United States Constitution

83.     Plaintiff re-alleges and incorporates, as if fully set forth herein, the foregoing paragraphs.

84.     The VMS Rule is an intended custom or policy of Defendants and is illegal and unconstitutional.

85.    This Court is authorized, and indeed must, set aside laws, rules, regulations, and executive actions that are unconstitutional.

86.    ASMFC promulgated the Addenda in 2022 allegedly according to the authority granted to it by NMFS, which Defendants claim creating a VMS mandate which is set to go into effect on December 15, 2023.

87.    Without NMFS creating a final rule, ASMFC actually had no authority to impose a VMS mandate yet Defendants took it upon themselves to impose a December 15, 2023 deadline to install VMS on Plaintiff's members' vessels.

88.    Mandating 24-hour surveillance of Plaintiff's members continuously for no just statutory cause is unconstitutional and illegal.

89.    The VMS Rule violates Plaintiffs' members' constitutional right to privacy by transmitting and archiving locations even when situated in private property shielded from the public eye.

90.    The VMS Rule gives Defendants the authority to conduct an unconstitutional and unlawful 24-hour GPS surveillance via VMS, which is a warrantless or unreasonable search violating the Fourth Amendment.

91.    In addition, if the data demanded is created by a device maintained by Plaintiffs, it belongs to them and the seizure of such data without any cause at all, never mind probable, of that data by RIDEM violates the due process clause of the Fourteenth Amendment to the U.S. Constitution.

92.    And indeed, Defendants have already admitted they will seize the data without cause by requiring the VMS tracker even on trips that are not for commercial fishing.

93.     By empowering themselves to conduct a warrantless search, ASMFC and RIDEM committed an *ultra vires* violation repugnant to the Constitution and in excess of any statutory authority grantable or granted by Congress.

94.     Therefore, VMS Rule is illegal and Defendants' intention and attempts to enforce it violate the Fourth and Fourteenth Amendments and thereby violate 42 U.S.C. § 1983.

## COUNT II

### 42 U.S.C. § 1983 Violation – Violation of the MSA

95.     Plaintiff re-alleges and incorporates, as if fully set forth herein, the foregoing paragraphs.

96.     To the harm of Plaintiff's members, there is an improper match up of means (the VMS Rule) with the goals of the MSA. Namely, the VMS Rule does not protect, conserve, grow, or help manage the United States' fishery resources; it is not implemented with the goal of continually achieving and maintaining optimum yield of fish but only surveils the location and movement of a select group vessels 24-hours a day, and regardless of whether they are engaging in NMFS-regulated activities.

97.     Put simply, there is no relation between the VMS Rule and the MSA's goals.

98.     The VMS greatly burdens Plaintiff's members, violating the MSA's National Standards.

99.     Defendants' GPS surveillance via VMS (on behalf of NMFS) gathers Plaintiff's members' proprietary business information including their fishing "spots," which, if divulged, may negatively affect Plaintiffs' businesses.

100.    There are months where vessels subjected to the VMS Rule are not used at all (due to NMFS's and RIDEM's other regulations), but the owners are likely to still be required to pay the monthly fee for VMS.

101.    The VMS Rule does little or nothing to prevent overfishing, for the vessel location reveals nothing of the number or kind of fish caught in any one trip.

102.    Indeed, the VMS Rule requires an operative and transmitting VMS even when the vessel is not engaged in commercial fishing.

103.    The VMS is a more expensive and more intrusive alternative to a logbook or system for reporting pertinent fishing locations and catches in a trip.

104.    The CAA § 101 creates field preemption over regulations of federally licensed lobster and Jonah Crab Fisheries such that Defendants have no authority to take state action enforcing the same without express federal approval.

105.    Therefore, the VMS Rule is illegal and Defendants' intention and attempts to enforce it violates 42 U.S.C. § 1983.

## COUNT III

### 42 U.S.C. § 1983 Violation – Violation of the CAA

106.    Plaintiff re-alleges and incorporates, as if fully set forth herein, the foregoing paragraphs.

107.    The VMS Rule violates the CAA because it is not an extension of an emergency rule existing at the time of the CAA's passage, but rather is a new regulation or administrative action to bring the lobster industry into compliance with the ESA and MMPA, despite the CAA mandating that the lobster industry is in full compliance with the ESA and MMPA and precluding the issuance of new regulations until 2028.

108.    CAA § 101(b) only exempts extensions of existing emergency rules but there was no existing emergency rule in existence on February 1, 2023, from which NMFS can promulgate the VMS Rule (and provides no exceptions for state actors).

109.    The VMS Rule is thus illegal under the CAA § 101 and Defendants have no legal authority to enforce it.

110.    The CAA § 101 creates field preemption over regulations of federally licensed lobster and Jonah Crab Fisheries such that Defendants have no authority to create state regulations affecting the same.

111.    Therefore, the VMS Rule is illegal and Defendants' intention and attempts to enforce it violate 42 U.S.C. § 1983.

### COUNT IV

### 42 U.S.C. § 1983 Violation – Violation of the ACFCMA

112.    Plaintiff re-alleges and incorporates, as if fully set forth herein, the foregoing paragraphs.

113.    The VMS Rule violates the ACFCMA because the ASMFC is not authorized to regulate the Exclusive Economic Zone without approval from the Secretary of Commerce.

114.    Despite requesting that NMFS codify the VMS Rule through final rulemaking, NMFS never did so.

115.    The ASMFC never consulted with MSA-authorized Councils prior to requiring the installation of VMS devices.

116.    By amending the Addenda to insert a VMS mandate despite having no authority from NMFS to do so, the ASMFC violated the law.

117.    Defendants' stated intent and attempts to enforce the VMS Rule which is unlawful and unauthorized under the ACFCMA is illegal and violates 42 U.S.C. § 1983.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for Judgment as follows:

1.      Declare that the VMS Rule is in violation of the Fourth Amendment to the United States Constitution;

   a.   Declare that Plaintiff and its members have a reasonable expectation of privacy from the 24-hour GPS surveillance of their movements out on the sea.

   b.   Declare that the sharing of such data and information with law enforcement agencies in order to attain information to use in a potential prosecutorial action is per se in violation of the Fourteenth Amendment.

2.      Declare that the VMS Rule is invalid and *ultra vires* because Congress did not empower NMFS or the ASMFC, and therefore Defendants are not empowered to, conduct warrantless 24-hour GPS surveillance or the forced industry financing of the VMS device that enable the illegal search.

   a.   Declare that the VMS Rule is unlawful and in violation of the MSA;

   b.   Declare that the VMS Rule is unlawful and in violation of the Consolidation Appropriations Act of 2022, H.R. 2617, § 101(a);

   c.   Declare that the VMS Rule is unlawful and in violation of the Atlantic Coastal Fisheries Cooperative Management Act, 16 U.S.C. § 5101 *et. seq.;*

3.      Find that Defendants have and will violate Plaintiff's members constitutional rights in violation of 42 U.S.C. § 1983;

4.      Restrain and permanently enjoin Defendants from enacting and enforcing the VMS Rule and from requiring Plaintiff's members from having to install and maintain the VMS;

5.      For all expenses, costs and disbursements, and reasonable attorney's fees as allowed by law;

6.      Such other and further relief the Court deems just and equitable.

ECKLAND & BLANDO LLP

Dated: December 12, 2023

/s/SAMUEL P. BLATCHLEY
Samuel P. Blatchley, Esq. (RI Bar No. 8284)
22 Boston Wharf Road, 7th Floor
Boston, MA 02210
(612) 236-0170
sblatchley@ecklandblando.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2023, I electronically filed the within document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/S/ SAMUEL P. BLATCHLEY
Samuel P. Blatchley, Esq.